IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN DOE | * | CIVIL ACTION NO. |
| Plaintiff, | * | |
| vs. | * | JUDGE |
| | * | |
| PRIORITY GROUP HOLDINGS, LLC | * | MAGISTRATE JUDGE |
| | * | |
| Defendant. | * | JURY DEMAND |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## PETITION FOR DAMAGES

1. This is an action to halt and seek redress for the unlawful discrimination based on disability that Defendant has implemented in its business practices.

2. The Americans with Disabilities Act ("ADA") expressly prohibits discrimination in employment on the basis of disability. 42 U.S.C. §§ 12101, *et seq*.

3. Despite these mandated protections, the Defendant has violated the Plaintiff's rights.

## PARTIES

4. The Plaintiff is John Doe, who was employed as a Certified Nursing Assistant at the Jo Ellen Smith Convalescent Center (hereinafter "Center") at 4502 General Meyer Ave., New Orleans, La 70131. He is a person of the age of majority and is HIV positive. The plaintiff has filed under a pseudonym in order to protect his status as a person affected by HIV. The identity of the plaintiff is protected in this Complaint, but Defendant may be made expressly aware of the identity of the plaintiff by contacting counsel for Plaintiff.

5. The Defendant is Priority Group Holdings, LLC (hereinafter "Priority") d/b/a the Jo Ellen Smith Convalescent Center, a Louisiana limited liability company. It can be served with

process through its registered agent, Douglas Boulware at 320 Bridgepoint Cir. Bossier City, LA 71111.

## FACTUAL BACKGROUND

6. Mr. Doe was hired as a Certified Nursing Assistant in mid-May 2015.

7. He is HIV-positive and requested time off for his medical appointments each month.

8. In August 2015, Director of Nursing Naja Ellis insisted that Mr. Doe divulge to her the reasons for his regular medical appointments.

9. He then informed her of both his HIV-positive status and that he goes to Priority Health Clinic for check-ups and treatment.

10. Ms. Ellis agreed to keep this information confidential.

11. On July 27, 2016, Mr. Doe was admitted into a local hospital and asked a friend to contact the Center to explain his absence from work.

12. Mr. Doe then received a call from an on-duty nurse, informing that his sister was calling.  However, at no time did Mr. Doe inform any family member that he was admitted to the hospital.

13. When Mr. Doe answered the phone, the caller hung up.

14. The following day, July 28, 2016, Mr. Doe contacted the Center staffing coordinator, Michelle Breaux, to inform her of how long he would be absent from work.

15. Ms. Breaux replied that she had contacted the hospital, but that he had been discharged when she spoke with the hospital staff.  Based upon this information, Mr. Doe believes it was Ms. Breaux who called the hospital posing as his sister.

16. Subsequently, on July 30, 2016 at 6:27 a.m., a co-worker called Mr. Doe, informing him that Ms. Breaux disclosed his HIV-positive status to the Center's employees and stated that Mr. Doe was "falling to pieces."

17. Also, upon information and belief, Ms. Breaux told the Center's employees that "I know he goes to Priority Health Care. Google it."

18. Due to the anxiety, humiliation, and mental anguish he experienced over this revelation, Mr. Doe arranged for his July 30, 2016 shift to be covered by another certified nurse's aide. Both Mr. Doe and the co-worker agreed to this by signing a shift exchange paper, which was approved by the Director of Nursing Naja Ellis.

19. Mr. Doe returned to work on July 31, 2016 at which time several co-workers approached him and said they heard about his condition.

20. Then, when he arrived at his duty station, Mr. Doe was immediately told to clock out and go home for a no-call, no-show based upon his shift exchange the previous day. He was told the shift exchange was void because he did not work on July 28, 2016.

21. After he arrived back home Mr. Doe received a phone call from Ms. Ellis, who stated that he could not be sent home because she had approved the July 30, 2016 shift exchange. Despite that, Mr. Doe was not asked to complete his July 31, 2016 shift.

22. On August 2, 2016, Mr. Doe asked for a copy of the Employee Handbook in order to follow the company's procedure for filing a grievance regarding the disclosure of his private health information.

23. The Human Resources director, Winifred Green, inquired why he wanted it and informed him that no such handbook exists because all were destroyed when Priority assumed control of the Center in October 2015.

24. Upon Mr. Doe's return to work on August 4, 2016, co-workers again began to question him about his HIV-positive status.

25. Mr. Doe then approached Administrator Clay McGee to discuss this disclosure, who informed Mr. Doe that he would do nothing to stop the continued discussion of the HIV-positive status among the Center's staff and harassment.

26. Overall, these disclosures caused Mr. Doe extreme anxiety, embarrassment, and mental anguish.

## JURISDICTION AND VENUE

27. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

28. Mr. Doe timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against the Defendant for discrimination in employment. The EEOC issued a "right to sue" letter on June 28, 2017.

29. Venue is proper because the discrimination occurred in this District.

30. This Court has jurisdiction over Defendant because it is located and operates in the State of Louisiana.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILIITES ACT: CONFIDENTIALITY

31. Paragraphs 1 – 30 above are restated as if fully incorporated herein.

32. The Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12101, *et seq.*, prohibits employers from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature of severity of the disability, unless such examination or injury is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

33. Although employers may inquire into an employee's medical history under limited circumstances, it "is treated as a confidential medical record." 42 U.S.C. § 12112(d)(3)(B).

34. HIV-positive status is a recognized disability under the ADA.

35. Priority violated the ADA when its staffing coordinator shared Mr. Doe's HIV-positive status with Mr. Doe's co-workers.

36. Priority obtained knowledge of Mr. Doe's status through an inquiry, but it did not protect that information as required by 42 U.S.C. § 12112(d)(3)(B).

## COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT: DISABILITY HARASSMENT

37. Paragraphs 1 – 36 above are restated as if fully incorporated herein.

38. Title I of the ADA and Title VII of the Civil Rights Act both prohibit discrimination in the "terms, conditions, and privileges of employment," based on a person's protected class. 42 U.S.C. § 12112(a); 42 U.S.C. § 2000e-2(a)(1).

39. Moreover, Title V of the ADA prohibits disability harassment, specifically stating that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

40. The 5th Circuit has outlined the following five factors than an employee must establish to successfully assert a harassment claim against an employer:

    A. The employee has a disability under the ADA;

    B. The employee was subjected to unwelcome harassment;

    C. The harassment was based on the employee's disability;

    D. The harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and

E. The employer knew or should have known of the harassment and failed to take prompt, remedial action. *Flowers v. S. Reg'l Physician Services Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001).

41. HIV-positive status is a recognized disability under the ADA.

42. Mr. Doe sought out assistance in stopping the harassment about his private health information, showing that Mr. Doe was subjected to the harassment and that it was unwelcome.

43. Further, the harassment was specifically regarding Mr. Doe's disability.

44. The questioning of his HIV-positive status became so pervasive that Mr. Doe was constructively discharged.

45. Finally, Mr. Doe made the employer directly aware of the harassment, and the employer refused to act.

## COUNT III: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT: CONSTRUCTIVE DISCHARGE

46. A constructive discharge takes place when the "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Bourque v. Powell Elec. Mgf.*, 617 F.2d 61, 65 (5th Cir. 1980).

47. Mr. Doe's working conditions were intolerable and it was foreseeable that he would resign when he was denied any relief from the ongoing sharing, discussion, and questioning of his private health information.

## JURY TRIAL REQUEST

48. Plaintiff hereby notifies the Court and Defendant of his intent to seek a trial by jury in this matter.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendant and award the following relief:

a. Appropriate injunctive relief, including but not limited to an order restraining Defendant from engaging in further discriminatory conduct of the types alleged in this complaint, and from submitting negative references to any of Plaintiff's potential future employers;

b. Back pay in an amount to be determined at trial;

c. Front pay;

d. Compensatory and consequential damages, including for emotional distress, against Defendant;

e. Punitive damages against Defendant;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and costs of this action; and

h. Any such further relief as the Court deems appropriate.

DATED: August 21, 2017

                            RESPECTFULLY SUBMITTED,

                            */s/* Galen M. Hair
                            Galen M. Hair, T.A. (LSBA No. 32865)
                            John E. Bicknell, Jr. (LSBA No. 36802)
                            Scott, Vicknair, Hair & Checki, LLC
                            909 Poydras Street, Suite 1100
                            New Orleans, LA 70112
                            Phone: (504) 684-5200
                            Facsimile: (504) 613-6351

                            *and*

*/s/* Joshual L. Holmes
Joshua L Holmes (LSBA No. 32162)
CrescentCare Legal Services
2601 Tulane Avenue, Suite 630
New Orleans, LA 70119
joshua.holmes@crescentcarehealth.org
Phone: (504) 568-1631 x792
Facsimile: (504) 301-1357
*Attorneys for Plaintiff*